UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 18-26 (PJS/SER)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM IN SUPPORT OF** |
| v. | ) | **DETENTION** |
| | ) | |
| TNUZA JAMAL HASSAN, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This memorandum is submitted in support of the government's motion for detention of defendant Tnuza Hassan ("Defendant"). A hearing on this motion is scheduled for Monday, February 12, 2018, at 11:00 a.m. On February 7, 2018, a United States Grand Jury returned a three-count indictment charging the defendant with attempting to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1) (Count 1), making a false statement in violation of 18 U.S.C. § 1001 (Count 2), and arson in violation of 18 U.S.C. § 844(i) (Count 3). Defendant faces a maximum potential penalty of 48 years' imprisonment.

The defendant was arrested by FBI Agents on February 8, 2018, at the Ramsey County Jail in St. Paul, Minnesota. That same day, the defendant made her initial appearance on the indictment. The United States Probation Office (USPO) presented a bond report recommending the defendant remain in custody during the pendency of the case against her. The USPO's recommendation was based on their assessment that the

defendant represented both a risk of flight and a danger to the community. At that time, the government made an oral to detain the defendant on the same grounds.

## Summary of the Argument

The defendant presents an extraordinary danger to the community and a significant risk of flight and therefore should remain in custody pending trial. The charges set forth in the indictment trigger a statutory presumption that the defendant be detained – one that, for the reasons described below, the defendant cannot possibly overcome. In short, there is sufficient evidence to believe the defendant (1) attempted to travel to Afghanistan to join a violent terrorist organization, (2) attempted to recruit others to do the same, (3) attempted to thwart law enforcement's investigation of her conduct, (4) lied to authorities and her family about her conduct, and (5) acted out violently against her own school community in furtherance of her radical ideology. Even absent the presumption of detention, there is abundant evidence to show that the defendant presents a risk of non-appearance and that represents a clear and present danger to the community.

## Summary of the Facts

As alleged in Count 1 of the indictment, the defendant attempted to provide material support, in the specific form of personnel, to al Qa'ida (AQ), a designated foreign terrorist organization. The evidence shows that on September 19, 2017, the defendant attempted travel to Kabul, Afghanistan, to join and support AQ and the "Islamic Resistance," which she defined as AQ and the Taliban. Following her departure, her family filed a "missing persons" report with law enforcement.

2

Prior to this conduct, the defendant had attempted to recruit two other female classmates at her school to join AQ, as well as other terrorist organizations she deemed "legitimate."  When questioned by law enforcement about this attempt to recruit others, she repeatedly denied any involvement and went so far as to suggest to the agents that the person who wrote the recruitment letter was motivated to make the three females who received the letter "look bad" because of their religious faith.

On December 29, 2017, the defendant again tried to leave the United States.   On this occasion, the defendant was ticketed to Ethiopia with her mother; however, she possessed in her carry-on a number of original identification documents belonging to her older sister.  Also, her luggage included a cold-weather jacket and winter boots.[1]  Ten days later, the defendant ran away from her mother's home and hid out on the campus of St. Catherine University (SCU).  During this period away, her family again reported the defendant "missing" to law enforcement.  The defendant's whereabouts remained unknown until January 17, 2018, when she set approximately nine fires in multiple buildings on the campus of her former school, including one that housed a daycare center in which thirty-three (33) children were present.

Following her arrest the defendant admitted to law enforcement that the fires she set were acts of *jihad* in retaliation for the alleged misconduct of U.S. military forces in Muslim lands.  The defendant has also bluntly stated that she hoped her actions would kill

---

[1] Authorities did not allow the defendant to board the flight to Ethiopia and her mother chose not to travel on to Addis Ababa.

innocent people.  Finally, she has admitted that if released from custody but not allowed to leave the U.S., she has the "right" to wage violent *jihad* here in America.

*The Law*

Under 18 U.S.C. § 3142(e)(3) there is a rebuttable presumption that the defendant be detained.  The rebuttable presumption arises where the Court finds that there is probable cause to believe that the defendant committed an offense listed in 18 U.S.C. § 2332b(g)(5)(B) which has a maximum term of imprisonment of 10 years or more. *See* 18 U.S.C. § 3142(e)(3)(B) and (C).  18 U.S.C. §§ 2339B(a)(1) and 844(i), as alleged in counts 1 and 3 respectively, are listed in § 2332b(g)(5)(B) and have a maximum term of imprisonment greater than 10 years (20 years each).

Title 18 U.S.C. § 3142(g) sets out a non-exhaustive list of factors this Court should consider in deciding whether to release or detain a defendant pending trial.  Those factors include (1) the nature and circumstances of the offense(s) charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and the seriousness of the danger to any person or the community that would be posed by the person's release.

Probable cause has already been established because the defendant has been indicted for these offenses.  United States v. Stone, 608 F. 3d 939, 945 (6th Cir. 2010); United States v. Hazime, 762 F. 2d 34, 37 (6th Cir. 1985).  The rebuttable presumption in favor of detention therefore arises.  As noted in United States v. Abad, 350 F. 3d 793, 798 (8th Cir. 2003), the rebuttable presumption places a limited burden of production on the defendant.

However, even when the defendant meets her burden, the presumption does not simply disappear:

> The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained before trial.

Stone, 608 F. 3d at 945.   In other words, the presumption does not disappear once the defendant has produced some rebuttal evidence but continues to be weighed with other factors.   United States v. LaFontaine, 210 F. 3d 125, 130-31 (2nd Cir. 2000).

The government's motion for detention is based both upon the danger she presents to the community and her risk of flight.   Dangerousness to the community is established under a clear and convincing standard, while risk of flight is established by a preponderance of the evidence. 18 U.S.C. § 3142(f); United States v. Kisling, 334 F. 3d 734, 735 (8th Cir. 2003).   Bail hearings are typically informal affairs, and not a substitute for trial or discovery.   Few detention hearings involve live testimony; most proceed on proffers. United States v. Abuhamra, 389 F. 3d 309, 321, n. 7 (2nd Cir. 2004).

The government, as the defendant, may proceed by proffer at a detention hearing. See e.g., United States v. El-Hage, 213 F. 3d 74, 82 (2nd Cir. 2000) (while the defendant may present his own witnesses and cross examine any witnesses that the government calls, either party may proceed by proffer and the rules of evidence do not apply); United States v. Smith, 79 F. 3d 128, 129-10 (D.C. Cir 1996) ("every circuit to have considered the matter has. . . permitted the government to proceed by way of proffer" (citations omitted)).   See

also <u>United States v. Femia</u>, 983 F. 2d 1046, *4 (1st. Cir. 1993) (unpublished); <u>United States v. Gaviria</u>, 828 F. 2d 667, 669 (11th. Cir. 1987).

18 U.S.C. § 3142(g) sets out a non-exhaustive list of factors a court should consider in deciding whether to release or detain a defendant pending trial.   Those factors include (1) the nature and circumstances of the offense(s) charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and the seriousness of the danger to any person or the community that would be posed by the person's release.

### Proffered Evidence in Support of Government's Motion

At the detention hearing, the government intends to proffer additional information from the investigation to aid in the Court's decision whether to grant the government's motion.  First, the government will proffer evidence of the defendant's statements to law enforcement containing multiple references to violent *jihad*, including those evidencing the defendant's desire to kill innocent Americans.  The government will also provide the court with a copy of the defendant's March 2017 recruitment letter.

If necessary, the government will proffer information about the terrorist organization the defendant sought to support and the reasons for that organization's designation by the United States Department of State.   The information presented will establish that the defendant's arson-related conduct on January 17, 2018, placed numerous college students, SCU staff members, and thirty-three (33) children at risk of death or significant injury.  While many of the fires set by the defendant caused little damage, her effort at burning down St. Mary Hall was markedly more serious.

The government will proffer information showing that the defendant's family has been unable to control, or account for, her behavior.   Indeed, on two separate occasions within the last five months, the defendant's family has reported her as a missing person to local police departments.  The defendant was first reported missing by her adult sister on September 20, 2017, after she had surreptitiously departed the United States on her way to Afghanistan to join AQ.  The defendant was again reported missing on January 10, 2018, after she disappeared from the family's Minneapolis apartment – only to be found hiding in a dorm lounge at SCU after setting multiple fires as a self-admitted act of *jihad*.

Further, as set forth below, the facts surrounding defendant's recent federal arrest and her statements about the laws of the United States demonstrate that she will not comply with Court orders regarding any condition or combination of condition of release.

***Defendant's Federal Arrest***:  the defendant was incarcerated at the Ramsey County Jail after state arson charges were filed against her for the series of SCU fires.  On January 19, 2018, a Ramsey County District Court Judge set bail at $100,000 and the defendant remained in that facility until February 8, 2018, when federal agents arrived to execute the federal arrest warrant associated with the indictment in this case.  During the ensuing transfer of custody, the defendant violently resisted jailers and federal agents, repeatedly kicking one officer, and attempting to scratch both a jailer and an FBI Agent.  The defendant's actions caused the agents to use both physical restraints and a secure transport chair to complete safely what should have been a routine movement of the defendant.

***Defendant's Statements Regarding Laws of the U.S.***:  in statements contained in her recruitment letter from March of 2017, as well as her admissions to law enforcement

7

during the ensuing investigation, the defendant espouses defiance to laws of the United States. For example, the recruitment letter she now admits having written sets forth her objection: "*Why would you live under a man made law over the law of Allah (swt). That is SHIRK[2].*" The defendant's recruitment letter also insists that AQ, the Taliban, and Al-Shabaab are "*legitimate jihad*" groups that are fighting to implement sharia law. When questioned later in 2017 following her attempt to join AQ, the defendant explained that she must follow sharia law, that it is "blasphemy" to follow the laws of a secular government, and that a Muslim who follows the laws of the U.S. "*will go to hell*." Following her arrest for arson in January of 2018, she was asked what she would do if she were released from custody but not allowed to leave the U.S. for a Muslim country, the defendant replied "*then I have the right to do jihad*."

   *Statutory Criteria for Detention*

   As referenced above, 18 U.S.C. § 3142(g) sets out a non-exhaustive list of factors a court should consider in deciding whether to release or detain a defendant pending trial. All of these factors weigh in favor of detention in this case. Two factors on that list outweigh all others in this case. Those factors are the nature and circumstances of the offenses charged, 18 U.S.C. § 3142(g)(1), and the nature and seriousness of the danger to the community that would be posed by the person's release, 18 U.S.C. § 3142(g)(4).

   As to the first factor, the defendant is charged attempting to provide material support to an organization whose brutality is well documented. The defendant has also been

---

[2] In Islam, "shirk" is the sin of practicing idolatry or polytheism.

charged with arson of a dormitory on the campus of SCU – one that housed both students and an active daycare center.  Both offenses are listed under § 2332b(g)(5)(B) as a "Federal crime of terrorism."

The weight of the evidence against the defendant is strong.  She got as far as Dubai in the United Arab Emirates in her effort to join AQ in September of 2017 and but for a lack of a visa, she may well be in the ranks of AQ at this moment.  She also eventually confessed to authoring and delivering the recruitment letter in March of 2017 after repeatedly telling federal agents she bore no responsibility for the document.  The defendant was also arrested on-scene for acts of arson alleged in Count 3, and after receiving <u>Miranda</u> warnings, confessed on to this offense.

The history and characteristics of the defendant also weigh in favor of detention.  Though she has no known criminal history, she has twice fled her home and college without warning to her family and has become dangerously radicalized to the point of attempting to cause the deaths of innocent citizens of the United States.  She is unemployed and has not attended school for the past four months.  She has also openly displayed her disrespect for the law and those sworn to uphold it.

In assessing the nature and seriousness of harm to the community posed by her release, the defendant's own recorded words speak chillingly to this issue.  As noted above, the defendant has openly acknowledged that she both expected and hoped that her fires would burn down the structures involved and that she wanted innocent Americans to die in these fires.  She has also admitted – and warned – that the community is "lucky" that

she did not know how to build a bomb because she would have used that instead in her acts of *jihad*.

But in this case, harm to the community also means harm to a broader community than Minnesota.   Indeed, the Court legitimately may (and should) consider the harm to innocent civilians in Afghanistan and elsewhere if the defendant achieves her ambition of traveling to Afghanistan or elsewhere and joining AQ.  *United States v. Hir*, 517 F.3d 1081, 1088-89 (9th Cir. 2008) ("Because the district court has the power to try Abd Hir under American law for a crime that allegedly resulted in grave harm to residents of the Philippines, we find no justification for preventing it from considering the continuing threat that Abd Hir would pose to that community if he were released pending trial.").

No amount of evidence concerning the defendant's family ties, lack of criminal history, or other Section 3142(g) factors could overcome the nature and seriousness of the offense charged and the risk of harm that could result if the defendant were to reach Afghanistan.  Further, if released, the defendant could – and has shown that she would – deliver on her credible threat to kill American citizens here in the United States.

## CONCLUSION

The charges of attempting to provide material support to a designated foreign terrorist organization and arson of a building affecting interstate commerce create a rebuttable presumption that the defendant be detained pending trial.   Beyond that, the evidence supporting the relevant statutory criteria demonstrates that both bases for detention – the risk of flight and his danger to the community – exist in this case.   For

these reasons, the government respectfully requests that the defendant be detained pending trial in this matter.

Dated: February 9, 2018                    Respectfully submitted,

                                           GREGORY J. BROOKER
                                           United States Attorney

                                           s/ Andrew R. Winter

                                           BY: ANDREW R. WINTER
                                           CHARLES J. KOVATS, JR.
                                           Assistant U.S. Attorneys